## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## Judge Regina M. Rodriguez

Civil Action No. 1:25-cv-03475-RMR

I.F.M.,

      Petitioner,

v.

JUAN BALTAZAR, in his official capacity as warden of the Aurora Contract Detention Facility,
ROBERT GUADIAN, in his official capacity as Field Office Director, Denver, U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security;
KRISTI NOEM, in her official capacity as Secretary, U.S. Department of Homeland Security,
TODD LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement,
PAMELA BONDI, in her official capacity as Attorney General of the United States,

      Respondents-Defendants.

---

## ORDER

---

Pending before the Court is Petitioner I.F.M.'s Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Application"), ECF No. 1, and Motion for Temporary Restraining Order And/Or Preliminary Injunction ("Motion"), ECF No. 5. Respondents filed a Response to the Motion, ECF No. 19, and I.F.M. filed a Reply to the Response, ECF No. 22. The Court has reviewed the Application, the Motion, the related briefing, and the applicable case law. For the reasons stated below, the Application, ECF No. 1, is GRANTED and the Motion, ECF No. 5, is DENIED AS

MOOT. Additionally, I.F.M.'s Emergency Motion for Temporary Restraining Order, ECF No. 12, is DENIED AS MOOT.

## I.    BACKGROUND

The following facts are taken from I.F.M.'s Application (ECF No. 1), Motion (ECF No. 5), and Respondent's Response, ECF No. 19. Unless controverted, the Court assumes the facts are true.

I.F.M. is a transgender woman and citizen of El Salvador. Growing up in El Salvador, she was raped by a neighbor and continuously sexually and physically assaulted by gang members for years. Her cousin was a member of MS-13 and attacked her with a machete. She later learned that MS-13 had put out an order to have her killed.

I.F.M. fled El Salvador through Guatemala and Mexico. During her journey, she faced threats and harassment based on her gender identity in these countries. She eventually arrived in the United States on or around September 26, 2019, and was thereafter apprehended by Customs and Border Patrol. Upon release from Immigration and Customs Enforcement ("ICE") custody, I.F.M. struggled to adjust to life in the United States due to her severe trauma, depression and PTSD symptoms. She also learned that she was HIV positive.

In July 2021, I.F.M. pled guilty to a charge of evading arrest or detention with a vehicle in violation of Texas Penal Code § 38.04. The judge initially deferred adjudication of guilt pending completion of a community supervision program. However, the charge was reinstated after I.F.M. violated her probation, and she was sentenced to three years in prison on May 24, 2023.

On or around April 5, 2024, I.F.M. was released from state custody into ICE custody. Then, she was transferred to the Aurora facility. On February 18, 2025, I.F.M. appeared before an immigration judge ("IJ") for an individual hearing related to her asylum application. The IJ determined, on February 26, 2025, that her "life and freedom would more likely than not be threatened in El Salvador" on account of her membership in the particular social group of "Salvadoran transgender woman" and "Salvadoran LGBTQ individuals." The IJ also found that her criminal conviction did not constitute a "particularly serious crime" that would bar her from asylum but ultimately denied her asylum application. The IJ entered an order of removal to El Salvador, which she then withheld based on a grant of withholding of removal under 8 U.S.C. § 1231(b)(3). Neither Department of Homeland Security ("DHS") nor I.F.M appealed the IJ's decision.

I.F.M. remained in detention as ICE pursued alternative countries for her removal pursuant to 8 U.S.C. § 1231(b). On March 28, 2025, I.F.M.'s counsel requested her release given her removal order was final. The ICE Enforcement and Removal Operations ("ERO") officer informed her counsel that ICE was seeing if other countries, namely Panama, Mexico, and Guatemala, would accept her. On April 2, 2025, I.F.M.'s counsel sent ERO officers a letter articulating I.F.M.'s fear of persecution and torture if removed to any of those countries. Six days later, I.F.M. moved to re-open her removal proceedings based on DHS's intent to deport her to a non-designated, third country. The IJ denied her motion.

3

Between April 23, 2025 and May 28, 2025, I.F.M.'s counsel consistently requested updates from ERO officers regarding I.F.M.'s removal. The ERO officers did not reply. On June 2, 2025, I.F.M. filed a second motion to re-open her case and request for emergency stay. The IJ granted a temporary stay of removal. On June 3, 2025, I.F.M. was removed from the Aurora Facility, without warning, to California. The next day, the IJ denied I.F.M.'s second motion to re-open her case.

I.F.M. was transferred back to the Aurora facility. On June 26, 2025, she received a decision on her 90-day review that the government would be continuing her detention. On or around July 19, 2025, Respondents removed I.F.M. to Natrona County Jail in Wyoming. There, I.F.M. suffered ongoing harassment from male inmates and guards. She was placed in solitary confinement when she complained and, for at least a week, was denied access to her medications for HIV and hormone therapy treatment.

On July 30, 2025, DHS conducted her 180-day custody review interview. The panel recommended that I.F.M. remain detained pending her removal to a third country. I.F.M. filed the current Application and Motion on October 31, 2025.

## II.    LEGAL STANDARD

### A.    Habeas Corpus Relief

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2241(c)(3). Habeas corpus proceedings under 28 U.S.C. § 2241 "remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Singh v. Choate*, No. 23-cv-02069-CNS, 2024 WL 309747, at *1 (D. Colo. Jan. 26, 2024) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)); *see also Hernandez-Ceren v. Wolf*, No. 20-cv-01628-RM, 2020 WL 3036074, at *1 (D. Colo. June 6, 2020) ("[A] person subject to removal is in custody for habeas purposes.").

The writ of habeas corpus is designed to challenge "the fact or duration" of a person's confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). "In other words, habeas corpus, and thus § 2241, offers detainees release from custody when the very fact that they are detained, or detained for a certain length of time, is unlawful." *Codner v. Choate*, No. 20-cv-01050-PAB, 2020 WL 2769938, at *4 (D. Colo. May 27, 2020).

### B. Post-Removal Detention Under § 1231

Two sections of the Immigration and Nationalization Act ("INA") authorize detention—8 U.S.C. § 1226, which concerns noncitizens who are not yet subject to a removal order, and 8 U.S.C. § 1231, which operates in the post-removal context. Petitioner is detained pursuant to § 1231. Under § 1231, "when a [noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days." § 1231(a)(1). The noncitizen must be detained during this initial 90-day timeframe, *see* § 1231(a)(2), which is "referred to as the 'removal period,' " § 1231(a)(1)(A). If the noncitizen "does not leave or is not removed within the removal period," then he or she is normally subject to supervised release. § 1231(a)(3). However, certain categories of noncitizens who have been ordered removed—including

inadmissible or criminal noncitizens, or noncitizens whom the Attorney General has determined are a risk to the community or are unlikely to comply with the removal order— "may be detained beyond the removal period." § 1231(a)(6). The text of the INA does not contain an express limit on the duration a noncitizen may be detained under its authority.

### C.    Temporary Restraining Order

To obtain a temporary restraining order, the moving party must establish "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quotation omitted); *see also Wiechmann v. Ritter*, 44 F. App'x 346, 347 (10th Cir. 2002) (the standard for a temporary restraining order is the same as the standard for a preliminary injunction). A party seeking an injunction must demonstrate that "all four of the equitable factors weigh in its favor," *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013), and a "plaintiff's failure to prove any one of the four preliminary injunction factors renders its request for injunctive relief unwarranted," *Vill. of Logan v. U.S. Dep't of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014).

### D.    Preliminary injunction

To succeed on a motion for a preliminary injunction, the moving party must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the

movant's favor; and (4) the injunction is in the public interest. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quotations and citation omitted). Granting such "drastic relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989), is the "exception rather than the rule." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

Certain types of preliminary injunctions, such as injunctions that alter the status quo or injunctions that require the nonmoving party to take some affirmative action, "are disfavored." *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 883 (10th Cir. 2021). To obtain a "disfavored" injunction, the moving party must "make a heightened showing of the four factors." *RoDa Drilling*, 552 F.3d at 1209; *Colorado v. Griswold*, 99 F.4th 1234, 1240 n.4 (10th Cir. 2024).

### III.    ANALYSIS

### A.    Habeas Relief Under 28 U.S.C. § 2241 (ECF No. 1)

I.F.M. argues that her detention violates the standard set by the Supreme Court in *Zadvydas*. In *Zadvydas*, the Supreme Court held that § 1231(a)(6) "does not permit indefinite detention," although the statute does not specify a time limit on how long the DHS may detain a noncitizen in the post-removal period. *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Rather, "in light of the Constitution's demands," a

noncitizen may be detained only for "a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Id*.; *accord Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579 (2022). The Supreme Court reasoned that "Congress previously doubted the constitutionality of detention for more than six months" and recognized six months as presumptively reasonable. *Zadvydas*, 533 U.S. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence to rebut that showing." *Id.* "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

Here, I.F.M.'s six-month period ended on September 29, 2025.  I.F.M. argues she is at high risk of indefinite detention, because she has been granted removal protection from her country of citizenship. ECF No. 1, ¶ 82. She also argues that she cannot legally be removed to a third country where she would likely face persecution and torture on account of her gender identity and sexual orientation. *Id.* ¶ 81. I.F.M. has expressed her fear of persecution and torture if removed to third countries  Mexico, Guatemala, or Panama. *Id.* ¶ 86. Respondents state that the government has additionally asked Costa Rica, Nicaragua, Honduras, Columbia, and Belize to accept Petitioner once removed. ECF No. 19 at 8. Additionally, "ICE continues to seek a third country to which Petitioner can be removed." *Id.* at 9.

Other courts have found such evidence insufficient. In *Zhuzhiashvili*, the government similarly stated that "ICE will continue its efforts to identify alternative

8

countries to which Petitioner can be removed," and the court did "not find such evidence to be sufficient." *Zhuzhiashvili v. Carter*, No. 25-3189-JWL, 2025 WL 2837716, at *3 (D. Kan. Oct. 7, 2025). In that case, the government had not made an actual request to a third country in nearly seven months. *Id.* Here, ICE made its last request on July 2, 2025, over four months ago. ECF No. 19 at 8. Even so, like the respondents in *Zhizhiashvili*, Respondents have not provided evidence or pointed to any specific fact that creates a significant likelihood that I.F.M. will be removed in the reasonably foreseeable future. In a similar case, this Court determined that, without such evidence, a petitioner's continued detention contravenes *Zadvydys*. *See Ahrach v. Baltazar*, No. 25-CV-03195-PAB, 2025 WL 3227529, at *5 (D. Colo. Nov. 19, 2025). In *Ahrach*, the respondents "anticipated" that they would continue searching for a third country that would accept the petitioner. *Id.* The respondents "provide[d] no information about how they might undertake that search" and "d[id] not identify which countries they might contact next, fail[ed] to explain how they will follow up with the countries they already reached out to, and list[ed] no concrete steps they will take to effectuate [the petitioner's] timely removal." *Id.* The *Ahrach* court determined that "respondents have not provided concrete evidence that removal is likely in the foreseeable future" and found that they had not adequately rebutted the petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* Thus, the *Ahrach* court found that the petitioner's "detention contravenes *Zadvydys*." *Id.*

Here, Respondents have similarly failed to provide any insight or details surrounding ICE's continuing search for a third country that will accept I.F.M.

Respondents have disclosed that, between June 1, 2025 and July 4, 2025, ICE submitted requests for acceptance to Costa Rica, Nicaragua, Honduras, Colombia, Belize and Panama. ECF No. 19-1, ¶¶ 25-31. ICE received rejections from Honduras, Costa Rica, and Panama. *Id.* ¶¶ 26, 31. Otherwise, "ICE continues to seek a third country to which Petitioner can be removed." *Id.* ¶ 39. Respondents have not provided information on how they will conduct this continued search, which countries they may contact next, or explain how they will follow up with the countries that have not responded to their requests. Therefore, this Court finds that Respondents have not provided the concrete evidence necessary to rebut I.F.M.'s reasoning that there is no significant likelihood of removal in the reasonably foreseeable future. Therefore, the Court grants Petitioner's Application and orders her release from custody, subject to an appropriate order of supervision.

The Court acknowledges I.F.M.'s argument that DHS violated her due process rights when it failed to provide her with any individualized reasons for her prolonged detention following her post-order custody review ("POCR"). ECF No. 1, ¶¶ 95-96. I.F.M. claims that this denial of due process warrants her release. *Id.* ¶ 99. Given that the Court has granted her release due to Respondents failure to rebut her showing that she has good reason to believe there is no significant likelihood of her removal in the reasonably foreseeable future, the Court need not address this particular argument.

**B.      Temporary Restraining Order and Preliminary Injunction**

In her Motion, I.F.M. requests temporary restraining order and/or preliminary injunction ordering Respondents release her from unlawful detention. Given the Court's ruling on I.F.M.'s Application ordering her release from detention, her Motion is DENIED AS MOOT.

**IV.      CONCLUSION**

For the reasons stated above, it is ORDERED that I.F.M.'s Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, ECF No. 1, is GRANTED, and Motion for a Temporary Restraining Order And/Or Preliminary Injunction, ECF No. 5, is DENIED AS MOOT. Additionally, I.F.M.'s Emergency Motion for a Temporary Restraining Order, ECF No. 12, is DENIED AS MOOT. It is further ORDERED that I.F.M. shall be released from custody on or before December 8, 2025.

DATED: November 24, 2025

BY THE COURT:

_____

REGINA M. RODRIGUEZ
United States District Judge